**Case No. 23-3138**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

JOHN DOE,

*Plaintiff-Appellee*,

v.

SSM HEALTH CARE
CORPORATION,

*Defendant-Appellant*.

---

On Appeal from the United States District Court
for the Eastern District of Missouri,
Case No. 23-cv-00022, the Honorable Stephen R. Clark

---

# REPLY BRIEF OF APPELLANT

---


PAUL G. KARLSGODT
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202
303.861.0600
pkarlsgodt@bakerlaw.com

DAVID A. CARNEY
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, Ohio 44114
216.621.0200
dcarney@bakerlaw.com

JOHN D. COMERFORD
ADAM J. SIMON
**DOWD BENNETT LLP**
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314.889.7311
jcomerford@dowdbennett.com
asimon@downbennett.com

*Attorneys for Defendant-Appellant*
*SSM Health Care Corporation*

# TABLE OF CONTENTS

**Page**

**INTRODUCTION......1**

**ARGUMENT......3**

A. THERE IS NO PRESUMPTION AGAINST REMOVAL IN THE FEDERAL OFFICER AND CLASS ACTION FAIRNESS ACT CONTEXTS......3

B. THE FEDERAL COURTS HAVE JURISDICTION OVER THIS CASE UNDER THE CLASS ACTION FAIRNESS ACT......4

C. DOE'S ARGUMENT ON THE CAFA EXCEPTIONS RELIES ON HIS TEXTUAL INTERPRETATION OF THE PUTATIVE CLASS DEFINITION......8

D. THE COURT'S DECISION IN THE DOE V. BJC HEALTH SYSTEM CASE DOES NOT PRECLUDE SSM HEALTH'S FEDERAL OFFICER REMOVAL APPEAL......10

E. SSM HEALTH ACTED UNDER COLOR OF FEDERAL LAW IN MAKING THE SSM HEALTH MYCHART PATIENT PORTAL AVAILABLE TO SSM HEALTH'S PATIENTS, BASED ON DOE'S ALLEGATIONS IN THIS CASE......12

F. THE CAUSAL CONNECTION AND THE ACTING UNDER REQUIREMENTS ARE CLOSELY RELATED IN THIS CASE......16

G. DOE'S AFFIRMATIVE HIPAA ALLEGATIONS PROVIDE THE COURT WITH THE COLORABLE FEDERAL DEFENSE REQUIRED TO SUPPORT FEDERAL JURISDICTION OVER HIS PETITION......18

**CONCLUSION......20**

**CERTIFICATE OF COMPLIANCE......21**

**VIRUS CHECK CERTIFICATION......22**

**CERTIFICATE OF SERVICE......23**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson, trustee of the Diane L. Anderson Revocable Trust v. Davis Wright Tremaine LLP*,
2021 WL 7184127 (D. Or. July 14, 2021) ........ 8

*Buljic v. Tyson Foods, Inc.*,
22 F.4th 730 (8th Cir. 2022) ........ 4

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*,
996 F.3d 243 (4th Cir. 2021) ........ 4

*In re Commonwealth's Motion to Appoint Counsel*
790 F.3d 457 (3d Cir. 2015) ........ 14

*Cons. Fin. Prot. Bur. v. All Am. Check Cashing, Inc.*,
33 F.4th 218 (5th Cir. 2022) ........ 15

*Dahl v. R.J. Reynolds Tobacco Co.*,
478 F.3d 965 (8th Cir. 2007) ........ 3, 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014) ........ 4

*Davis v. Michigan Dept. of Treasury*,
489 U.S. 803 (1989) ........ 7

*Doe v. BJC Health System*,
--- F.4th ----, 2023 WL 8942887 (8th Cir. Dec. 28, 2023) ........ 3, 10, 12

*In re DoubleClick, Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ........ 18

*Graves v. 3M Co.*,
17 F.4th 764 (8th Cir. 2021) ........ 17

*Growers 1-7 v. Ocean Spray Cranberries*,
2016 WL 10849499 (D. Mass. May 10, 2016) ........ 5

*Hood v. Gilster-Mary Lee Corp.*,
785 F.3d 263 (8th Cir. 2015) ....................................................................10

*Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*,
77 F.4th 546 (7th Cir. 2023) ......................................................................6

*Jeff D. v. Andrus*,
899 F.2d 753 (9th Cir. 1989) ......................................................................5

*Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*,
713 F.2d 370 (8th Cir. 1983) ......................................................................9

*Mesa v. California*,
489 U.S. 121 (1989)....................................................................................19

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .............................................................2, 17

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997)......................................................................................7

*Sawyer v. Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) ....................................................................14

*Smith v. Facebook*,
262 F.Supp.3d 943 (N.D.Cal.2017)...........................................................19

*Smith v. Facebook*,
745 F.App'x 8 (9th Cir. 2018) ...................................................................19

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,
990 F.3d 447 (5th Cir. 2021) ....................................................................16

*Stephenson v. Nassif*,
160 F. Supp. 3d 884 (E.D. Va. 2015) .......................................................15

*U.S. Dep't of the Navy v. Fed. Labor Rel. Auth.*,
665 F.3d 1339 (D.C. Cir. 2012).................................................................14

*Watson v. Philip Morris Cos.*,
551 U.S. 142 (2007).................................................................................4, 11

**Statutes, Rules & Other Authorities**

28 U.S.C. § 1332 ........................................................................................3, 8

28 U.S.C. § 1442 ........................................................................................*passim*

28 U.S.C. § 1446 ........................................................................................4

42 U.S.C. § 300jj-11 ...................................................................................15

42 U.S.C. § 1395w-4...................................................................................15

42 C.F.R. § 495.20 ......................................................................................13, 16

45 C.F.R. § 160.103 ....................................................................................20

EXECUTIVE OFFICE OF THE PRESIDENT, OFF. OF MANG'T & BUDGET, Memo. for the Heads of Exec. Dept's & Agencies (Nov. 8, 2016), *Policies for Federal Agency Public Websites & Digital Services*........................2

REBECCA MITCHELL COELIUS, *Get the facts regarding view, download and transmit 2014 requirements* ..........................................................13

## INTRODUCTION

Plaintiff-Appellee John Doe's response brief proceeds from the premise that SSM Health is some nefarious actor, secretly deceiving patients into providing their most sensitive health information to SSM Health through SSM Health's public websites, which is then disclosed to Facebook through a surreptitious "barter." (Resp. Br. 11-13.) The alleged information at issue, however, is not actual medical records, it is internet metadata that resides on internet website browsers, including internet protocol addresses, internet browser fingerprints, and internet cookies. (Appellant's Appendix (hereafter, "App.") 32-34, R. Doc. 1-1, at 8-10, ¶¶ 31-40.)

Doe's response brief also overlooks SSM Health's website privacy policy, which is available at https://www.ssmhealth.com/privacy-notices-terms-of-use/website-terms-of-use/website-privacy-policy. This privacy policy discloses that SSM Health, "as well as third-party vendors, use cookies to analyze user activity through SSMHealth.com." (*Id.* at 2/4 ("Cookies and Website Analytics").) "We use this data to gain insights about how to improve functionality and user experience of SSMHealth.com." (*Id.*)

The policy is explicit this included Facebook analytical tools: "In addition, SSMHealth.com uses remarketing services to measure, optimize and build custom audiences for advertising services on Facebook." (*Id.* at 3/4.) "Any data collected will be used in accordance with Facebook's privacy policy." (*Id.*) The policy further

told website visitors "[y]ou may adjust your Facebook ad preferences" (*id.* (emphasis in original)), and provided a direct link to the following website: https://www.facebook.com/ads/settings.

These points are relevant to the jurisdictional questions before the Court only in this sense: these tools exist and are used because there is no absolute privacy on the Internet. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155 (9th Cir. 2007) (describing the Internet as "a world-wide network of networks all sharing a common communications technology").

The question before the Court, with respect to Doe's petition, is thus this: what judiciary, federal or state, should provide the coloring to this gray area, and decide which alleged third-party internet disclosures are appropriate, and which ones are not, and for what reasons.

For Doe's petition, SSM Health respectfully submits that the answer to this question is the federal judiciary, under both 28 U.S.C. § 1332(d) and under 28 U.S.C. § 1442(a)(1). For the reasons explained further below, this is so notwithstanding this Court's decision yesterday in the related *BJC* appeal, where the Court affirmed the district court's order granting remand of an analogous website privacy complaint under the federal officer removal statute. *See Doe v. BJC Health System*, --- F.4th ----, 2023 WL 8942887, at *6 (8th Cir. Dec. 28, 2023).

## ARGUMENT

### A. There Is No Presumption Against Removal in the Federal Officer and Class Action Fairness Act Contexts.

Doe argues as follows in his standard of review: "All doubts about federal jurisdiction must be resolved in favor of remand, and federal courts are to strictly construe legislation permitting removal." (Resp. Br. 20 (citing *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007).) *Dahl*, however, involved a different and preliminary question: whether this Court's federal officer removal decision in the *Watson* case was an "amended pleading, motion, order or other paper" which re-started the time for removal under 28 U.S.C. § 1446(b). *See Dahl*, 478 F.3d at 969. The case thus did not involve an interpretation of the scope of either 28 U.S.C. § 1442(a)(1) itself or the Class Action Fairness Act directly.

In both contexts, the Supreme Court and this Court have held there is no presumption against remand. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2022) ("[t]he federal officer removal is to be 'liberally construed,' and thus the typical presumption against removal does not apply") (quoting *Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 250-51 (4th Cir. 2021)).

### B. The Federal Courts Have Jurisdiction Over this Case under the Class Action Fairness Act.

Doe argues that federal jurisdiction in this case does not exist under the Class Action Fairness Act because "Doe's Proposed Class is limited to Missouri citizens and SSM Health is also a Missouri citizen, foreclosing this case from proceeding in federal court on the basis of CAFA jurisdiction." (Resp. Br. 18; *see also id.* at 20 (arguing that "Doe's Proposed Class is self-limited to Missouri citizens; not even one non-Missouri citizen would be included").)

This statement, however, begs the question: Is Doe's putative class really only limited to Missouri citizens, or does it include any Missouri citizen, during the fullest period of law, "who are, *or were*" SSM Health patients, even if they had subsequently domiciled elsewhere prior to the filing of the petition?

This is a question of textual interpretation. *See Growers 1-7 v. Ocean Spray Cranberries*, 2016 WL 10849499, at *3 (D. Mass. May 10, 2016) (holding that "[c]onstrual of class definitions follows principles of contractual and statutory interpretation") (citing *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (in turn holding that "[t]he district court construes the language of a class definition in much the same way that it might construe the language of a contract or a statute")).

Doe argues the opening phrase "during the fullest period of law," as used in his class definition, "operates to include only claimants with unbarred claims,

whatever the result of Doe and SSM Health's dispute over the appropriate statute of limitations." (Resp. Br. 22; *see also* App. 417; R. Doc. 28, at 16 (same).)

Yet, the statute of limitations would operate irrespective of how Doe defined his putative class. Doe cannot represent citizens from any state with time-barred claims. Moreover, Doe had already alleged his belief that "[t]he applicable statutes of limitation have been tolled as a result of Defendant's knowing and active concealment and denial of the facts alleged herein." (App. 60; R. Doc. 1-1, at 36, ¶ 141.) Further, that "Plaintiff and Class Members could not with due diligence have discovered the full scope of Defendants' conduct, because there were no disclosures or other indication that they were interacting with websites employing the Meta Pixel." (App. 61; R. Doc. 1-1, at 37, ¶ 143.) And finally, that "[a]ll applicable statutes of limitations have also been tolled by operation of the discovery rule and the doctrine of continuing tort." (App. 61; R. Doc. 1-1, at 37, ¶ 145.)

Thus, and based on these prior allegations, Doe's proposed interpretation of the phrase "during the fullest period allowed by law" gives no independent meaning to this language, which is contrary to the rules of construction. (Open. Br. 19-20; *cf., e.g., Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 77 F.4th 546, 555 (7th Cir. 2023) ("When possible, contract language should be construed to give meaning to every word, avoiding constructions which render portions of a contract meaningless, inexplicable, or mere surplusage.") (quotation omitted).

Doe argues that his interpretation of the class definition is supported by the "whole-text" construction canon. (Resp. Br. 23-24.) As Doe explains: "In his complaint, Doe repeatedly states that he intends to act as a class representative of Missouri citizens and that he intends to bring this lawsuit just on behalf of himself and all similarly situated citizens in the state of Missouri." (*Id.* at 24.)

Doe does not cite any provision of his petition to support this statement. (Resp. Br. 24.) The district court in its opinion below relied on this allegation from paragraph 6 of Doe's petition: "On behalf of himself and all similarly situated citizens in the state of Missouri, Plaintiff seeks an order enjoining Defendant from further unauthorized disclosures of his personal information; awarding liquidated damages in the amount of $10,000 per violation, attorney's fees and costs; and granting any other preliminary or equitable relief the Court deems appropriate." (App. 417; R. Doc. 28, at 16; *see also* App. 27; R. Doc. 1-1, at 3, ¶ 6 (same).)

Here again, though, Doe's petition is subject to competing inferences. *First*, this cited statement does not purport to limit the scope of the putative class definition in any way. Under either parties' interpretation of Doe's putative class it is undisputed that Doe seeks to represent individuals currently domiciled in the State of Missouri as part of this case. (Open. Br. 16-17.) SSM Health simply contends that, as a matter of textual interpretation, Doe has not limited his putative class *exclusively* to individuals who are currently domiciled in Missouri.

*Second*, and in the most relevant allegation to exclusions from the class definition, Doe made no mention of former Missouri citizens. Instead, Doe only excluded the following individuals from his putative class: (1) "any Judge or Magistrate presiding over this action and members of their families"; (2) "the Defendant, Defendant's subsidiaries, affiliates, parents, successors, predecessors, and any entity in which the Defendant or its parent has a controlling interest and their current or former employees, officers, or directors"; and (3) "Plaintiff's counsel and Defendant's counsel." (App. 62; R. Doc. 1-1, at 38, ¶ 151.)

Thus, the whole-text canon does not support Doe's interpretation of his putative class definition. Notably, in the *Robinson* case, where the Supreme Court held that the term "employees" should be interpreted to include former employees, the Court also cited the whole-text canon to support its interpretation of the statute. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (holding "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

The Court had previously made this same holding as well, once again relying on the whole-text canon. *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 808-09 (1989) (holding the term "employees" also included former employees under the Civil Service Retirement Act; "It is a fundamental canon of statutory construction

that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.”).

Doe argues “28 U.S.C. § 1332(d)(7) also disqualifies from class membership a person who was a Missouri citizen when she visited SSM Health’s website but moved to another state before Doe filed this lawsuit.” (Resp. Br. 24.) 28 U.S.C. § 1332(d)(7), however, is not a “disqualification” provision; the language only speaks to the point at which citizenship “of the members *of the proposed classes* shall be determined” for purposes of undertaking the Class Action Fairness Act jurisdictional analysis. 28 U.S.C. § 1332(d)(7) (emphasis added).

The statute thus does not answer the makeup of the proposed classes; it merely defines the moment at which that class’s citizenship—whomever may be included—is determined. *See also Anderson, trustee of the Diane L. Anderson Revocable Trust v. Davis Wright Tremaine LLP*, 2021 WL 7184127, at *4-5 (D. Or. July 14, 2021), *aff’d* 2022 WL 562024, at *1 (D. Or. Feb. 23, 2022) (rejecting same argument).

### C. Doe’s Argument on the Home-State and Local-Controversy Exceptions Relies on His Interpretation of the Putative Class.

Doe devotes only two pages of his response brief to the home-state and local-controversy exceptions. (Resp. Br. 25-26.) And on the exceptions, Doe’s argument for their application is wholly dependent upon his preferred textual interpretation of the putative class. As Doe states: “The only remaining areas potentially in dispute—whether over two-thirds of the proposed class are Missouri citizens and whether the

principal injuries occurred in Missouri—depends on the definition of Doe's Proposed Class." (*Id.* at 26.)

For the reasons set forth above, and in our opening brief, the Court should hold that the better interpretation of Doe's proposed putative class is that it includes former Missouri citizens, at least so long as they were domiciled when they were an SSM Health, and subsequently moved elsewhere, at least prior to the filing of the petition.

This fight over what the phrase "during the fullest period allowed by law," as used at the beginning of a putative class definition, may seem like an academic exercise. Yet, it is the exercise mandated by Congress through the Class Action Fairness Act. There would be nothing foreclosing Doe from attempting to expand the scope of his putative class on remand; as the district court acknowledged, the putative class definition is "less than crystal clear." (App. 415; R. Doc. 28, at 14.)

This threshold ambiguity should be interpreted against Doe, as the drafter of the provision, and not against SSM Health. *See Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*, 713 F.2d 370, 375 (8th Cir. 1983) ("If any ambiguity has been created by the incorporation of both these clauses in the contract, that ambiguity must be resolved against the drafter of the contract, which in this case is the City."). For these reasons, the Court should hold federal jurisdiction in this case exists under the Class Action Fairness Act.

### D. The Court's Decision in the *Doe v. BJC Health System* Case Does Not Preclude SSM Health's Federal Officer Removal Appeal.

For federal officer removal, SSM Health acknowledges at the outset this Court's decision yesterday in the related case against BJC Health System. *See Doe v. BJC Health System*, --- F.4th ----, 2023 WL 8942887, at *6 (8th Cir. Dec. 28, 2023).

While the timing could have been better, SSM Health respectfully submits that the decision in *BJC* does not preclude SSM Health's federal officer removal appeal here. Most importantly, the case is distinguishable in this important respect: *BJC* did not involve a Missouri Wiretap Act claim, where the "contents" that form the basis for the claim include the alleged internet transmissions that occur the precise moment when an individual clicks on the SSM Health MyChart patient portal link. *Compare BJC Health Sys.*, 2023 WL 8942887, at *1 (describing BJC's removal argument as follows: "BJC argues that it is eligible for federal officer removal because, when it created and operated its online patient portal, it acted under the United States Department of Health and Human Services (HHS)").

SSM Health respectfully submits that whether or not this is a distinction without a difference should be an important question for this Court to analyze. This is so for this reason: the undisputed evidence in this case shows that SSM Health "acted under" color of federal law in making a patient portal available to SSM

Health's patients, at least in some sense of the term. (App. 400-401; R. Doc. 19-7, at 2-3, ¶¶ 1-5.)

The question is whether or not SSM Health acted under color of federal law in making a patient portal available to its patients in the more limited *Watson*, federal officer removal sense of the term. *See Watson v. Philip Morris Cos.*, 551 U.S. 142, 147-153 (2007).

This more limiting *Watson* analysis in turn should be placed within the historical confines of the statute, as dictated by *Watson* itself. *Id.* at 147. Moreover, the historical discussion of the statute from *Watson* shows this: from its very inception, the statute was designed to provide a federal forum for those persons, whether they be customs officials, *id.* at 147-48, revenue or prohibition officers, *id.* at 148-49, and even their chaffeurs, *id.* at 149-50, who *assisted* the federal government in some way that potentially made them liable under some state law.

As that analysis is applied to this case, the question before the Court both becomes more clear and more narrow. That question is this: when the federal government has implemented a policy of providing immediate access to patient healthcare records online; when the Internet by its very nature is not private; and when Doe claims it is a violation of the Missouri Wiretap Act the precise moment when an individual clicks on that SSM Health MyChart patient portal link; is this the type of circumstance under 28 U.S.C. § 1442(a)(1) where Congress provided for

federal jurisdiction based on the basic federal governmental interest in the matter, in that the potential application of the state law is necessarily questioning the judgment of the federal policy itself?

SSM Health respectfully submits that this question is not answered, at least not entirely under the facts in this case, by the decision in *BJC*. SSM Health thus submits the following reply to Doe's arguments on federal officer removal.

**E. SSM Health Acted Under Color of Federal Law in Making the SSM Health MyChart Patient Portal Available to SSM Health's Patients, Because of Doe's Allegations in this Case.**

Doe first argues "SSM Health's discussion of the Meaningful Use Program is misleading." (Resp. Br. 29.) Doe does not explain what about SSM Health's discussion of the Meaningful Use Program was misleading. The factual record is before the Court, and Doe himself acknowledges in the very same paragraph that the program "encourages healthcare providers to (1) create and maintain electronic health records, (2) *make these health records available to patients through electronic patient portals*, and (3) *encourage patients to use electronic patient portals to access their electronic health records*." (*Id.*, emphasis added).

Doe argues "the regulations say nothing about websites." (Resp. Br. 16.) The regulations, however, establish as a basic criteria that patients and their guardians and caretakers should have the ability to view their health care records immediately online. *See, e.g.*, 42 C.F.R. § 495.20(f)(12)(i)(B) ("Beginning in 2014, provide

patients with the ability *to view online*, download, and transmit information about a hospital admission.") (emphasis added); *see also id.* at (ii)(B) (same); *see also*\ REBECCA MITCHELL COELIUS, *Get the facts regarding view, download and transmit 2014 requirements*, at pg. 1 (published Jan. 31, 2014) ("All providers and hospitals attesting to Meaningful Use in 2014 will need to implement the [view, download, and transmit] VDT capabilities for their patients. Those in Stage 1 will attest for *access*, those in Stage 2 will attest for *use*.") (emphasis in original).

Doe argues that "[i]f the Meaningful Use Program had never existed, Doe's claims would remain the same." (Resp. Br. 30.) This is so, Doe contends, because "[t]he Meta Pixel is not needed to create or store electronic health records, nor is it needed to for patients to access their electronic health records." (*Id.*; *compare id.* at 15 ("Much less does SSM Health claim that anyone in the federal government directed it to barter its patients' personal health information to Facebook.").)

This argument too narrowly focuses the relevant acting under inquiry. As the Third Circuit held in *In re Commonwealth's Motion to Appoint Counsel*: "we disagree that the Federal Community Defender is required to allege that the complained-of conduct *itself* was at the behest of a federal agency." 790 F.3d 457, 470 (3d Cir. 2015). "It is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the Federal Community Defender and the [Administrative Office of the United States Courts]." *Id.*; *see also, e.g., Sawyer v.*

*Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) ("courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*") (emphasis in original).

Moreover, as shown through SSM Health's opening brief (Open. Br. 44-45), the National Coordinator herself expressly encouraged health care providers to use Facebook to promote their online patient portals. (App. 322; R. Doc. 19-6, at 5 ("Use Playbook language *on your website or Facebook page* to let patients know how they can use the patient portal to participate in their care") (emphasis added).

Doe argues that "[e]ven if the federal government had sought to promote a policy of disclosing patients' personal health information to online marketers, federal officer jurisdiction would still not exist because the Meaningful Use Program is simply a regulatory program." (Resp. Br. 33.)

With respect to the decision in *BJC*, the factual record before the Court shows much more than "simply a regulatory program." This was a foundational federal government initiative through the Medicare and Medicaid Programs, that President George W. Bush began with an Executive Order in April 2004 and Congress continued gave teeth to through the HITECH Act in 2009. *See Executive Order # 13335, Incentives for the Use of Health Information Technology and Establishing the Position of the National Health Information Technology Coordinator* (Apr.

2004); 42 U.S.C. § 1395w-4(o) (Incentives for adoption and meaningful use of certified EHR technology); *cf. U.S. Dep't of the Navy v. Fed. Labor Rel. Auth.*, 665 F.3d 1339, 1346-47 (D.C. Cir. 2012) ("The power over the purse was one of the most important authorities allocated to Congress in the Constitution's 'necessary partition of power among the several departments.'") (quoting *The Federalist No. 51*, at 320 (James Madison, Clinton Rossiter ed., 1961)); *Cons. Fin. Prot. Bur. v. All Am. Check Cashing, Inc.*, 33 F.4th 218, 231-32 (5th Cir. 2022) (Jones, J., concurring) ("by most accounts, Congress's fiscal powers are its most formidable tool").

To be sure, the governmental direction comes from the Meaningful Use regulations. *See* 42 C.F.R. § 495.20(f)(12)(i)(B) ("Beginning in 2014, provide patients with the ability *to view online*, download, and transmit information about a hospital admission.") (emphasis added). But when the federal government is paying healthcare providers to comply with the specific details of these regulations and to report on this compliance, there is no meaningful distinction between this and some type of agency relationship. (App. 400-401; R. Doc. 19-7, at 2-3, ¶¶ 1-5.)

Either way, as applied to Doe's factual allegations in this case, the Court should hold that the acting under requirement is met. *See also Stephenson v. Nassif*, 160 F. Supp. 3d 884, 888-89 (E.D. Va. 2015) (allowing removal of former employee's state law retaliation claims for filing confidential information red flag report under Department of Defense federal regulations; "it is pellucid that the broad

language of § 1442(a)(1) must be applied in a manner that effectuates the central congressional policy of securing a federal forum for persons who assist the federal government in a manner that risks the imposition of state law liability”).

### F. The Causal Connection and the Acting Under Requirements Are Closely Related In This Case.

Doe argues the causal connection requirement is also not met because “SSM Health points to nothing in the record showing that the federal government directed, instructed, or ordered SSM Health to use the Meta Pixel to collect and disclose patient information.” (Resp. Br. 39.) To the contrary, pointing to a recent regulatory guidance issued by the Department of Health and Human Services, Doe argues “the federal government has instructed hospitals like SSM Health *not* to engage in the charged misconduct.” (*Id.* at 40 (emphasis in original).)

Notably, however, the federal government’s own actions have been entirely inconsistent on this point. (*See American Hospital Association, et al. v. Melanie Fontes Rainer, et al.*, Case No. 4:23-cv-01110, Dkt. # 1, Compl. ¶ 9 (Dep’t of Veteran Affairs screenshot showing use of Meta Pixel); *id.*, ¶ 10 (Medicare.gov screenshot showing use of Google Analytics and advertising analytics technologies); *id.*, ¶ 11 (Military Health System & Defense Health Agency screenshot (same).)

In any event, as relevant here, the acting under and causal connection requirements ride in tandem with one another, based on Doe’s patient portal allegations. *See St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*,

990 F.3d 447, 454 (5th Cir. 2021) (holding that "though the 'acting under' and 'connection' elements may often ride in tandem toward the same result, they are distinct"); *Graves v. 3M Co.*, 17 F.4th 764, 769 (8th Cir. 2021) (holding that while the two requirements are distinct, "[w]hat both Graves and the district court ignored is that the causal connection element is closely related to the 'acting under' element when the party seeking removal is itself not a federal officer").

As Doe specifically alleges: "Defendant aided in the interception of 'contents' in at least the following forms: . . . i. The precise text of specific buttons on Defendant's website(s) that patients click to exchange communications, including Log-Ins, Registrations, Requests for Appointments, Search, and other buttons," (App. 71; R. Doc. 1-1, at 47, ¶ 185(i)), as well as "[t]he precise dates and times when patients click to Log-In on Defendant's websites," (*id.* at 47, ¶ 185(j)).

Moreover, the causal connection is met in this case for this additional reason: by its very nature, what we do on the Internet is not private. *See In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 501 (S.D.N.Y. 2001) ("The 'Internet' is a shorthand name for the vast collection of interconnected computer networks that evolved from the Advanced Research Projects Agency Network ('ARPANet') developed by the United States Defense Department in the 1960's and 1970's. Today, the Internet spans the globe and connects hundreds of thousands of independent networks."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1155

(9th Cir. 2007) (same; describing the Internet as "a world-wide network of networks all sharing a common communications technology").

Through his claims, including his Missouri Wiretap Act claims, Doe is thus asking some judiciary to draw lines as to what alleged internet third-party disclosures are appropriate, and which ones are not. This includes precisely when an individual does the very thing that the federal government wanted SSM Health to make sure that SSM Health provided to its patients and their caretakers: click an internet link to be able to gain immediate access to their health care records online.

As the Supreme Court made plain in *Willingham*, however: "If the question raised is whether they were engaged in some kind of 'frolic on their own' in relation to respondent, then they should have an opportunity to present their version of the facts to a federal, not a state, court." *Id.* "This is exactly what the removal statute was designed to accomplish." *Id.*; *see also Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020) ("[W]hether the challenged act was outside the scope of Defendants' official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer.").

**G. Doe's HIPAA Allegations Provide the Court With the Federal Question Required to Support Federal Jurisdiction.**

Finally, with respect to the colorable federal defense element, Doe does not dispute that through his petition Doe alleges SSM Health violated HIPAA. (Resp. Br. 43.) Doe instead argues these allegations should not affect the Court's removal

analysis because, as he puts it, "SSM Health's argument fails for a more prosaic reason: it fails to explain how HIPAA would provide a valid defense to the nine state law claims in Doe's petition." (Resp. Br. 43.)

That is not what the case law cited in SSM's opening brief holds, however. This precedent establishes that when an alleged, and disputed, federal statutory violation forms the basis for plaintiff's alleged state law claims, the colorable federal defense element is met. As the Supreme Court held in *Mesa v. California*, 489 U.S. 121 (1989): "To assert that a federal statute does *not* impose certain obligations whose alleged existence forms the basis of a civil suit is to rely on the statute in just the same way as asserting that the statute *does* impose other obligations that may shield the federal officer against civil suits." 489 U.S. at 130 (emphasis in original). "Both are equally defensive and equally based in federal law." *Id*.

SSM Health will show that alleged internet metadata transfers on publicly available websites do not violate HIPAA, as the Ninth Circuit previously held. *See Smith v. Facebook*, 262 F.Supp.3d 943, 955 (N.D.Cal.2017), *aff'd* 745 F.App'x 8, 9 (9th Cir. 2018) ("The same pages are available to every computer, tablet, smartphone, or automated crawler that send GET requests to these URLs," and thus also "[n]othing about the URLs, or the contents of the pages located at those URLs, relates 'to the past, present, or future physical or mental health or condition <u>of an individual</u>'") (quoting 45 C.F.R. § 160.103, emphasis in original)).

## CONCLUSION

The Court should reverse the district court's remand order.

Date: December 29, 2023

Respectfully submitted,

/s/ *David Carney*

DAVID A. CARNEY
**BAKER & HOSTETLER LLP**
127 Public Square, Suite 2000
Cleveland, Ohio 44114
216.621.0200
dcarney@bakerlaw.com

PAUL G. KARLSGODT
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, Colorado 80202
303.861.0600
pkarlsgodt@bakerlaw.com

JOHN D. COMERFORD
ADAM J. SIMON
**DOWD BENNETT LLP**
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
314.889.7311
jcomerford@dowdbennett.com
asimon@downbennett.com

*Attorneys for Defendant-Appellant*
*SSM Health Care Corporation*

## CERTIFICATE OF COMPLIANCE

Defendant-appellant SSM hereby certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 28.1(e)(2)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), the brief contains 4,662 words. The brief is written using Microsoft Office Word Version 2302 in 14-point Times New Roman font, a proportionally spaced typeface, which meets the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) and 32(a)(6).

December 29, 2023

/s/ *David Carney*
*One of the Attorneys for Defendant-Appellant*
*SSM Health Care Corporation*

## VIRUS CHECK CERTIFICATION

Pursuant to Circuit Rule 28(A)(h), I also hereby certify that electronic files of this Reply Brief have been submitted to the Clerk via the Court's CM/ECF system. The files have been scanned for viruses and are virus-free.

December 29, 2023

/s/ *David Carney*
*One of the Attorneys for Defendant-Appellant*
*SSM Health Care Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2023, a copy of the foregoing *Reply Brief of Appellant* was served electronically on all parties. Notice of this filing will be sent to counsel for all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *David Carney*
*One of the Attorneys for Defendant-Appellant*
*SSM Health Care Corporation*